UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARIEL ALONSO MARTINEZ,

Petitioner,

v.

Case No. 2:26-cv-2013-KCD-KRH

WARDEN, FLORIDA SOFT SIDE SOUTH DETENTION CENTER, U.S. ATTORNEY GENERAL,

Respondents,

_______________________________/

# ORDER

Petitioner Ariel Alonso Martinez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.) He claims, among other things, that his continued imprisonment violates the Fifth Amendment. Respondents oppose the petition. (Doc. 9.) For the reasons below, the petition is **GRANTED**.

## I. Background

Martinez is a citizen of Cuba. He was paroled into the United States in 1997. Several years later, however, he was ordered removed. He was not deported at that time but instead placed on supervision. On November 13, 2025, ICE revoked that supervision and put him back behind bars. He has remained there ever since. Martinez argues his removal is not reasonably foreseeable and asks this Court to order his immediate release.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period

"reasonably necessary" to secure his removal. 533 U.S. 678 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Martinez satisfies the initial temporal requirement. ICE took him into custody nearly a year ago. Because the period for presumptively reasonable detention has long since expired, *Zadvydas*'s burden-shifting framework applies. Martinez has carried his initial burden of showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. The timeline does all the work here. Martinez has been in ICE custody for almost a *full year*. Back in June, the Government assured the Court that it would remove him to Mexico "in or about the next two weeks." But it is now November, and Martinez is still

here. The Government's missed deadline and the passage of several months provide all the proof Martinez needs at this juncture.

The burden thus shifts to the Government to rebut Martinez's showing, but they fail to do so. To be sure, the Government points out that Martinez previously prevented removal by refusing to leave a holding room at the border back in March. But past resistance is not a blank check for indefinite detention. The Government offers no evidence, nor even a passing argument, that Martinez is still dragging his feet today. (*See* Doc. 15.) A single standoff from eight months ago says nothing about his conduct now. Without some proof that Martinez's obstruction is ongoing, the Government cannot blame him for the delay or use it to justify keeping him locked up indefinitely.

As mentioned, the Government told the Court that Martinez was scheduled for deportation back in July. It is now November, and he remains detained. The Government's own conduct here proves that removaal is nowhere is sight.

## III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Martinez will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the conditions of his order of supervision and any other reasonable

conditions the Government might impose. To the extent Martinez's petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Ariel Alonso Martinez from custody within 48 hours of this Order under the prior conditions of supervision or any other conditions imposed, which Petitioner must continue to comply with.

**ORDERED** in Fort Myers, Florida on November 12, 2026.

Kyle C. Dudek
United States District Judge